UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MARIANNE T. O'TOOLE, as Trustee of
the Chapter 7 Bankruptcy ESTATE OF
DONALD R. SWARTZ and ROSE A.
SWARTZ, Debtors,

        Plaintiff,

   -against-        1:12-CV-1228 (LEK/RFT)

ULSTER COUNTY,

        Defendant.

_____

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

Plaintiff Marianne O'Toole ("Plaintiff")[1] commenced this disability discrimination action

against Defendant Ulster County ("Defendant").  Dkt. Nos. 1 ("Complaint"); 8 ("Amended

Complaint").[2]  Presently before the Court is Defendant's Motion for summary judgment.  Dkt. No.

40 ("Motion").  For the following reasons, the Motion is denied.

## II. BACKGROUND

### A. Employment and Diagnosis

Plaintiff Rose Swartz began working for Defendant as a mental health specialist in August

1988.  Dkt. Nos. 40-1 ("Statement of Material Facts") ¶¶ 1, 3; 54 ("Statement of Material Facts

_____

[1] Plaintiff brings this action in her capacity as Trustee of the Bankruptcy Estate of Donald and Rose Swartz.  The activities underlying this action concern the employment of Rose Swartz; thus, for clarification purposes, Rose Swartz will hereafter be referred to as "Plaintiff."

[2] Plaintiff originally sued only her employer, the Ulster County Department of Health, see Compl., and later added Ulster County as a defendant, Am. Compl.  The parties subsequently stipulated to a discontinuance of claims against Ulster County Department of Health.  See Dkt. No. 18.  Therefore, Ulster County is the only Defendant remaining in this action.  See Docket.

Response") ¶¶ 1, 3.  In or about October 2003, Plaintiff was promoted to the position of clinical supervisor.  <u>See</u> SMF ¶ 3; SMF Resp. ¶ 3; <u>see also</u> Dkt. No. 53 ("Swartz Affidavit") ¶ 4.  Plaintiff's job responsibilities include supervising a clinical staff of social and clerical workers, and providing direct clinical and ongoing therapeutic services.  SMF ¶ 11; SMF Resp. ¶ 11.  To fulfill her duties, Plaintiff is required to, *inter alia*, type reports and other documents, facilitate and document phone intake for patient services, and file reports and other related documents.  <u>See</u> SMF Resp. ¶¶ 12-13; Swartz Aff. ¶¶ 4-6, 13.

In July 2008, Plaintiff was diagnosed with carpal tunnel syndrome ("CTS") in her right hand. Swartz Aff. ¶ 9.  In February 2009, Plaintiff underwent unsuccessful surgery on her right hand.  <u>Id.</u> ¶ 10.  Plaintiff was also diagnosed with CTS in her left hand in March 2010.  <u>Id.</u> ¶ 11.

**B.  Voice Recognition Software**

In February 2009, Plaintiff requested that Defendant install a user-based voice recognition software (the "Dragon Program") on her computer to alleviate the strain on her hands in typing reports.  SMF ¶¶ 19-21; SMF Resp. ¶¶ 19-21; Swartz Aff. ¶ 15.  Plaintiff was advised that if she wanted the Dragon Program, she would have to purchase it herself, which she did.  Swartz Aff. ¶¶ 15-16.  Defendant asserts that it later reimbursed Plaintiff for the cost of the Dragon Program, SMF ¶ 24, but Plaintiff disputes that she was ever offered reimbursement, Swartz Aff. ¶ 18. Defendant also claims that it instructed and trained Plaintiff on how to use the Dragon Program, SMF ¶ 27, but Plaintiff asserts that she was told she was "on [her] own," Swartz Aff. ¶ 17.  The parties also dispute whether the Dragon Program functioned properly over the next several months. SMF ¶ 28; SMF Resp. ¶ 19.

### C. Personal Printer

In or about July 2009, the printer attached to Plaintiff's computer stopped working. Swartz Aff. ¶ 20; SMF ¶ 30. Plaintiff requested a new printer and even offered to provide one at her own expense. Swartz Aff. ¶ 23. However, Defendant denied this request because, at the time, Defendant had a policy that prohibited any external devices from being connected to Defendant's data system. SMF ¶¶ 31, 33; SMF Resp. ¶¶ 31, 33. Consequently, Plaintiff was required to use the central office printer, which was shared by approximately twelve other staff members. Swartz Aff. ¶ 20. Because the office printer was used by so many employees, Plaintiff often had to sort through voluminous documents to retrieve her own, which exacerbated her CTS. Id. ¶¶ 20-21. Approximately six to eight weeks after Plaintiff's request, a new printer was installed in her office. SMF ¶ 32; SMF Resp. ¶ 32.

### D. Filing Assistance

On December 14, 2009, Plaintiff met with Linda Brewer ("Brewer"), Defendant's Program Supervisor, to discuss accommodations, including, *inter alia*, assistance with filing. Swartz Aff. ¶ 24. Brewer requested a doctor's note to justify the requested accommodations, and Plaintiff provided the note on January 27, 2010. Id. ¶ 25. A few days later, Plaintiff was called into a meeting with her immediate supervisor, Bruce Barrack ("Barrack"); Brewer; Kristin Carney; and Commissioner Brown ("Brown"), who joined by way of telephone conference. Id. ¶ 26. Brown stated that he would consider Plaintiff's request, but that if he found her current or any future requests unreasonable, she would be terminated. Id.

### E. Duty Reallocation and Ergonomic Assessment

In April 2010, following an appointment with her treating physician, Dr. Kenneth Spaeth

("Spaeth"), Plaintiff spoke with Barrack to request "swapping duties" to assume responsibilities that required less strain on her hands. Swartz Aff. ¶¶ 30-31. Plaintiff also requested an ergonomic evaluation of her workspace. Id. ¶ 32. On June 6, 2010, an employee from Defendant's Safety Office performed an ergonomic assessment of Plaintiff's work station. Swartz Aff. ¶ 38; SMF ¶ 34. Plaintiff asserts that the evaluation was inadequate because (1) she was not present for the employee to analyze the workstation with regard to her individual needs, and (2) the employee had no professional expertise in performing ergonomic assessments. Swartz Aff. ¶ 38; SMF ¶ 35. Nonetheless, the employee recommended certain changes and accommodations be made to Plaintiff's workstation. Swartz Aff. ¶ 39. Plaintiff was provided with a new chair, but Plaintiff found the chair unhelpful and eventually brought in her own. SMF ¶¶ 37-38. Plaintiff was also provided with a new workstation approximately six months after the assessment. Swartz Aff. ¶ 54.

### F. Dictaphone

Because the Dragon Program had not been working properly, on June 9, 2010, Plaintiff made a request to use a dictaphone and have her notes and treatment plans transcribed for her. Swartz Aff. ¶ 40; SMF Resp. ¶ 131. Brown responded that Plaintiff's request could not be "reasonably accommodated in light of the fact that it would require the hiring of additional clerical staff." Swartz Aff. ¶ 43. Plaintiff responded by offering to pay privately for an employee to transcribe her notes after-hours, a practice which had been previously utilized by other professionals in her office. Id. ¶ 44. Defendant did not reply to Plaintiff's proposal. Id.

### G. Initial Accommodations

In July 2010, Defendant requested that Plaintiff undergo an independent medical examination ("IME") to determine whether she should be placed on leave for disability pursuant to

New York Civil Service Law § 72.[3]  SMF ¶ 71; Swartz Aff. ¶ 45.  Plaintiff appeared as requested

with Dr. Marc Bergeron on July 14, 2010.  Swartz Aff. ¶ 49.  Dr. Bergeron concluded that "the only

function [Plaintiff] would have difficulty performing, which is definitely important in the type of

work she is doing, would be 'prepar[ing] reports of narrative and statistical nature, as well as

general correspondence; maintenance records [sic].'"  Dkt. No. 41, Ex. N. at 4.  Plaintiff

acknowledged that she was having extreme difficulty keeping up with these job tasks due to her

CTS.  See id.

        A few weeks after her exam, having received no response from Defendant, Plaintiff

requested a meeting with Brenda Bartholomew ("Bartholomew"), Defendant's personnel officer.

Swartz Aff. ¶ 50.  Plaintiff informed Bartholomew that she intended to file a complaint with the

Equal Employment Opportunity Commission ("EEOC") based on Defendant's conduct thus far.  Id.

A few days later, on August 2, 2010, Plaintiff received a letter from Bartholomew stating that

Defendant would agree to provide the following accommodations: (1) a new computer to allow the

Dragon Program to operate properly; (2) implementation of the security office employee's

ergonomic recommendations; and (3) observation of Plaintiff in her work environment by an

independent ergonomic reviewer after the other accommodations had been in place for a reasonable

time period.[4]  Id. ¶ 52.  Plaintiff was not placed on § 72 leave at that time.  See SMF ¶ 75.

---

[3] New York Civil Service Law § 72 provides, in relevant part, that if an employee is unable
to perform the duties of her position by reason of a non-occupational disability, she may be required
to undergo a medical examination, and if found mentally or physically unfit for duty, be placed on a
leave of absence.

[4] Around this time, Plaintiff withdrew her request to use a dictaphone, as it appeared no
longer necessary after Defendant agreed to provide her with a properly functioning version of the
Dragon Program.  Swartz Aff. ¶¶ 131-32.

**H. Touchscreen Monitor**

During late October and November 2010, Patty Griffis ("Griffis"), Defendant's technical support technician, suggested that a touch screen monitor would be helpful in creating an ergonomic work environment for Plaintiff. Swartz Aff. ¶¶ 17, 64. Plaintiff communicated her request for a touchscreen monitor to Bartholomew, who said that she would follow up with Plaintiff; however, Plaintiff never heard back from Bartholomew. Id. ¶ 65.

**I. Paperwork Deficiencies and Unpaid Leave**

Defendant asserts that Plaintiff had been deficient in her paperwork responsibilities for several months and planned to place Plaintiff on "special review" in June 2010, but delayed the process to see if the accommodations would allow Plaintiff to regain satisfactory performance. SMF ¶ 62. Defendant states that Plaintiff showed improvement until October 2010, when an audit revealed missing paperwork. Id. ¶¶ 63-64. Defendant also states that Plaintiff improved in November, but when she again fell behind in December, she was placed on special review. Id. ¶¶ 51, 56, 66; Swartz Aff. ¶¶ 62-63. Plaintiff does not dispute that the October audit revealed substantial missing paperwork. See SMF Resp. ¶ 64. However, Plaintiff's supervisor claimed that Plaintiff was making significant progress and was on track to regain satisfactory performance. Id. ¶¶ 64-65.

On December 22, 2010, Plaintiff was informed that she was officially being placed on § 72 leave. SMF ¶ 81; SMF Resp. ¶ 81. Plaintiff states that she received a letter indicating that she would be placed on involuntary, unpaid leave because "[i]t is the opinion of [Defendant] that your request for the removal or reassignment of a significant part of your job duties and responsibilities is not reasonable based on the needs of [Defendant]." Swartz Aff. ¶ 87. Plaintiff contends that at the

6

time she was placed on leave, Defendant had in its possession reports from five doctors indicating that Plaintiff could perform her job responsibilities with certain, reasonable accommodations, such as "limiting sorting and filing," "work environment modifications," limitation on repetitive hand movement," and "prescribing breaks." Id. ¶ 90.

Plaintiff appealed the leave determination and was scheduled for a hearing, but Defendant withdrew the § 72 leave because Plaintiff was granted worker's compensation. SMF ¶ 82; SMF Resp. ¶ 82. Plaintiff remained on involuntary, unpaid leave for the next several months. SMF Resp. ¶¶ 81-89. Defendant maintains that Plaintiff remained on leave because she had not been certified fit for duty. SMF ¶¶ 83, 86. In contrast, Plaintiff argues that Defendant simply refused to allow Plaintiff to return to work; Brown later informed Plaintiff that she could return to work, but only with the previous accommodations in place. Swartz Aff. ¶¶ 92-97. In March 2011, Plaintiff filed a complaint with the EEOC. Id. ¶ 84. Plaintiff states that Defendant refused to discuss accommodations with her until August 2011, when Plaintiff retained counsel. Swartz Aff. ¶¶ 100-01; SMF Resp. ¶ 125.

**J. Summary of the Complaint**

Plaintiff alleges that Defendant discriminated against her under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et. seq., and the Rehabilitation Act, 29 U.S.C. § 701 et seq., by failing to reasonably accommodate her requests for: (1) clerical assistance with filing; (2) a touch screen monitor; (3) an effective voice recognition program; (4) professional training on the Dragon program; (5) workplace restructuring to provide an ergonomic environment; and (6) job restructuring. Am. Compl. ¶¶ 100-03, 108-11; SMF Resp. ¶ 133. Plaintiff further claims that she was placed on unpaid leave in retaliation for her accommodation requests. Am. Compl. ¶¶ 104-07,

112-15; SMF ¶¶ 137-38.  Plaintiff seeks monetary damages for the period in which she was subject to unpaid leave.  <u>See</u> Am. Compl.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) instructs a court to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Although "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>see also</u> <u>Taggart v. Time, Inc.</u>, 924 F.2d 43, 46 (2d Cir. 1991).

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  If the non-moving party will bear the burden of proof on a specific issue at trial, the moving party may satisfy its own initial burden by demonstrating the absence of evidence in support of an essential element of the non-moving party's claim.  <u>Id.</u>  If the moving party carries its initial burden, then the non-moving party bears the burden of demonstrating a genuine issue of material fact.  <u>Id.</u>  This requires the nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts."  <u>Matsushita Elec. Indus. Co. v. Zenith Corp.</u>, 475 U.S. 574, 586 (1986).  At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party.  <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000); <u>Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.</u>, 164 F.3d 736, 742 (2d Cir. 1998).  A court's duty in reviewing a motion for summary judgment is "carefully limited" to finding

genuine disputes of fact, "not to deciding them." <u>Gallo v. Prudential Residential Servs.</u>, 22 F.3d 1219, 1224 (2d Cir. 1994).

## IV.   DISCUSSION

### A.  Discrimination

ADA discrimination claims proceed according to the familiar burden-shifting framework established in <u>McDonnell Douglas Corp. v. Greene</u>, 411 U.S. 792 (1973).[5]  <u>See</u> <u>Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc.</u>, 198 F.3d 68, 72 (2d Cir. 1999).  Under this framework, a plaintiff must first make out a *prima facie* case by showing that: (1) the plaintiff's employer is subject to the ADA; (2) the plaintiff was a person with a disability within the meaning of the ADA; (3) the plaintiff was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) the plaintiff suffered adverse employment action because of her disability.  <u>Shannon v. N.Y. City Transit Auth.</u>, 332 F.3d 95, 99 (2d Cir. 2003).  "A plaintiff's burden of establishing a *prima facie* case is *de minimis*."  <u>Abdu-Brisson v. Delta Air Lines, Inc.</u>, 239 F.3d 456, 467 (2d Cir. 2001).  If the plaintiff meets this minimal burden, the employer must offer a "clear and specific" nondiscriminatory reason for the adverse action.  <u>Meiri v. Dacon</u>, 759 F.2d 989, 996-97 (2d Cir. 1985).  Once such a reason is provided, the plaintiff can no longer rely on his *prima facie* case, but may prevail if he can show that the employer's action was in fact the result of discrimination.  <u>Holcomb v. Iona Coll.</u>, 521 F.3d 130,

---

[5] Because the ADA's requirements apply with equal force to Rehabilitation Act claims, courts analyze the claims together.  <u>See</u> <u>Andino v. Fischer</u>, 698 F. Supp. 2d 362, 378 (S.D.N.Y. 2010) (citing <u>Hargrave v. Vermont</u>, 340 F.3d 27, 34-35 (2d Cir. 2003)); <u>Henrietta D. v Bloomberg</u>, 331 F.3d 261, 272 (2d Cir. 2003).  Unless a distinction is pertinent, the Second Circuit treats claims under the two statutes identically.  <u>See</u> <u>Henrietta D.</u>, 331 F.3d at 272; <u>Powell v. Nat'l Bd. of Med. Exam'r</u>, 364 F.3d 79, 85 (2d Cir. 2004).  Therefore, Plaintiff's ADA and Rehabilitation Act claims will be treated jointly.

138 (2d Cir. 2008).

A plaintiff can establish a *prima facie* case of discrimination based on a failure to accommodate by showing that: (1) "plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform essential functions of the job at issue; and (4) the employer refused to make such accommodations."  Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 (2d Cir. 2006).  Once the plaintiff establishes her *prima facie* case, the burden shifts to the employer to show that the requested accommodation is not reasonable.  McElwee v. Cnty. of Orange, 700 F.3d 635, 642 (2d Cir. 2012).

In this case, Plaintiff claims that Defendant discriminated against her by failing to make reasonable accommodations that would allow her to perform essential job functions.  Am. Compl. ¶¶ 100-03, 108-11.  Defendant challenges Plaintiff's failure to accommodate claim by arguing that: (1) Plaintiff is not a person with a disability within the meaning of the ADA; and (2) even with reasonable accommodation, Plaintiff was unable to perform the essential functions of her job.  Dkt. No. 40-2 ("Defendant's Memorandum") at 4-9; see also Dkt. No. 57-5 ("Reply") at 3-7.

*1. Disability*

The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(1).  The ADA states that the definition of disability should be construed in favor of "broad coverage of individuals," and that "[a]n impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability," 42 U.S.C. § 12102(A), (C).  Moreover, "the

threshold issue of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis." 29 C.F.R. § 1630.2(j)(iii).

Plaintiff concedes that CTS is not a "*per se* disability" under the ADA, due to differences in severity and duration of its effects. Dkt. No. 52 ("Plaintiff's Memorandum") at 5 (citing Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 200-01 (2002) (reversed on other grounds)). However, Plaintiff argues that CTS is a disability where there is evidence that it "substantially limits a major life activity." Pl.'s Mem. at 5. Plaintiff states that she meets this standard because her CTS impacts her everyday activities, such as dressing, cleaning, grooming, and eating. Id. Moreover, Plaintiff's treating physicians concur with her claimed limitations, and also opine that Plaintiff's CTS is severe and of lifetime duration. Pl.'s Mem. at 5.

Defendant argues that Plaintiff is not disabled under the ADA because she has only alleged that she is unable to prepare reports and file and sort papers. Def.'s Mem. at 3-4. In support, Defendant relies on Lugo v. Shineski, No. 06 Civ. 13187, 2010 WL 1993065, at *7 (S.D.N.Y. May 19, 2010), where the court held that limitation on typing alone is insufficient to establish disability within the meaning of the ADA.[6] Def.'s Mem. at 3-4. However, in Lugo the plaintiff stated that his only limitation was pain in his hands; he did not allege that his CTS otherwise limited any of his major life activities. Id. at *12. Moreover, "there [wa]s evidence in the record suggesting that [plaintiff's] condition was not long-lasting." Id. Furthermore, Lugo expressly emphasized the importance of analyzing CTS claims on a case-by-case basis. See id. (noting that in the case of CTS

_____

[6] Although not argued by Plaintiff, the Court notes that Lugo was decided prior to the 2008 ADA Amendments Act ("ADAAA"), which substantially revised the definition of relevant terms within the ADA. Pub. L. No. 110–325, 122 Stat. 3553 (2008). On that ground alone, Lugo is inapplicable to this case. The discussion that follows demonstrates that, even under the post-2008 standard, Lugo is factually distinguishable from this case.

"[a]n individualized assessment of the effect of an impairment is particularly necessary" because "the impairment is one whose symptoms vary widely from person to person") (citation omitted).

Here, Plaintiff does not allege that her CTS simply causes her pain, but rather that it limits several of her major life activities. See Pl.'s Mem. at 5; see also Daniels v. Health Ins. Plan of Greater New York, No. 02 Civ. 6054, 2007 WL 27115, at *8-9 (S.D.N.Y. Jan. 4, 2007) (finding genuine issue of fact as to disability determination where plaintiff with bilateral CTS had difficulties with typing, showering, and dressing). Plaintiff has also provided medical documentation that her CTS is severe and of lifetime duration. Id.; cf. Lugo, 2010 WL 1993065, at *12. Therefore, Lugo is distinguishable from this case, and a rational factfinder could conclude that Plaintiff is disabled within the meaning of the ADA.

### 2. Reasonable Accommodation

In order to prevail on her failure to accommodate claim, Plaintiff must show that (1) with reasonable accommodation, she could perform the essential functions of his job, and (2) Defendant refused to make such accommodations. See Graves, 457 F.3d 184. "Reasonable accommodation" may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, . . . and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9). "On the issue of reasonable accommodation, the plaintiff bears only the burden of identifying an accommodation, the costs of which, facially, do not clearly exceed its benefits." Kennedy v. Dresser Rand Co., 193 F.3d 120, 122 (2d Cir. 1999). Moreover, "[t]his burden is not a heavy one . . . ." Id.

### a. Essential Job Functions

Defendant argues that Plaintiff was unfit to perform the duties of preparing reports and filing

and sorting papers, even with reasonable accommodations in place. Def.'s Mem. at 4. Plaintiff

disagrees, arguing that she was able to successfully fulfill these job responsibilities when she

returned to work in October 2011 with the following accommodations in place: (1) a new computer

with the latest version of the Dragon Program; (2) a touchscreen computer; (3) a personal printer;

(4) an ergonomic assessment by a medical professional; and (5) assistance with pulling and refiling

charts by existing staff. Swartz Aff. ¶ 101; SMF ¶ 89.

In support of her argument, Plaintiff has included a "Productivity to Actual" Comparison

chart, which indicates that she exceeded her assigned performance metrics for all but two months

from January through August 2012. See Dkt. No. 53-45 at 2. Plaintiff has also submitted a

performance evaluation from December 10, 2012, which indicates that her "Accuracy/Quality of

Work" was "satisfactory." Id. at 8.

The Court notes that, with respect to "Paperwork," the evaluation indicates Plaintiff "had a

difficult period [in late 2012] where she had not completed a number of intake assessments";

however, "[a]fter being counseled on this she ha[d] been doing her intakes in a more timely

fashion." Id. at 11. Moreover, the evaluation acknowledges that "[Plaintiff] has been working with

accommodations/equipment to get her paperwork done. There have been some equipment problems

along the way that have caused slowdowns in completing work at times." Id. at 12.

Defendant does not contest the veracity of these reports, or that they establish that Plaintiff's

performance, including her ability to handle paperwork, improved dramatically once she was

provided with the requested accommodations. See generally Reply. Moreover, there is evidence

that Plaintiff's paperwork deficiencies were, at least in part, due to problems with the

accommodation—the Dragon Program. Therefore, Defendant has failed to establish that Plaintiff

13

was unable to perform the essential functions of her job even with the accommodations in place.

### b. Defendant's Refusal to Accommodate

Defendant argues that, since 2009 when Plaintiff requested installation of the Dragon Program, it provided numerous accommodations to Plaintiff. Def.'s Mem. at 7. Defendant asserts that the only accommodation it did not provide was the hiring of another individual to assist Plaintiff with preparing reports and sorting and filing paperwork. Id. at 8. Plaintiff responds that Defendant refused to provide numerous accommodations, Pl.'s Mem. at 5-17, which the Court addresses in turn.

### i. The Dragon Program

Plaintiff claims that she requested the Dragon Program be installed on her computer to minimize keyboard use in preparing reports, and was told that she would have to pay for it herself and would receive no technical support or training from Defendant. Pl.'s Mem. at 7. Plaintiff further asserts that Defendant continued to ignore her pleas that the program was not working properly for nearly a year before they eventually resolved the problem. Id. at 13-14. Defendant responds that, upon installing the software purchased by Plaintiff, it discovered that it was incompatible with her computer, so Defendant purchased the proper program and reimbursed Plaintiff—a fact which Plaintiff disputes. Reply at 3. Defendant further asserts that, while it offered Plaintiff initial training, the "real" training was incumbent upon Plaintiff, as the program functions based on her unique voice, and that Plaintiff failed to avail herself of technical support available to her. Id.

It is clear that the parties offer differing accounts as to whether Defendant refused to accommodate Plaintiff by installing the Dragon Program and providing proper training and technical

support.  Defendant claims that it fully accommodated Plaintiff, and any shortcomings were due to her failure to seek out technical support.  Reply at 3.  However, By Plaintiff's account, she was required to purchase the program at her own expense and received minimal training and technical support.  Pl.'s Mem. at 7, 13-14.  Plaintiff also argues that the software did not work properly, and she was not provided with the necessary training, until she returned to work in 2011.  See id. Therefore, the Court finds that there is a material dispute as to whether Defendant refused to provide Plaintiff with the Dragon Program and the necessary professional training before she was placed on leave.

ii.  Workstation Assessment

Plaintiff states that to the extent Defendant provided any of the other requested accommodations, she was only provided with a workstation assessment.  Pl.'s Mem. at 10. However, Plaintiff argues that the assessment was flawed in two ways: (1) she was not present, so the examiner could not assess her workstation in relation to her individual needs, and (2) the person sent by Defendant was not an ergonomics professional.  Id. at 10-11.  Plaintiff also states that it took approximately six months for her workstation changes to be implemented.[7]  Id. at 11.  Defendant responds that the County's Safety Office is the department trained and tasked with ergonomic review for Defendant, and the employee conducted a proper review, which involved a discussion with Plaintiff.  Reply at 4.  Furthermore, Defendant argues that it accommodated Plaintiff's request

---

[7] Plaintiff also appears to argue that Defendant's seeming "accommodation" was disingenuous.  In addition to her claim that Defendant did not send a properly trained professional, she also states that her supervisor told her that she had a "free pass until the desk gets here," and in fact was forced into unpaid leave a mere two weeks after the workstation arrived.  Pl.'s Mem. at 11; see also Swartz Aff. ¶ 113 ("Plaintiff was told by Mr. Barrack . . . that this recommendation for a new workstation was unexpected and meant that Plaintiff had a 'free pass until the desk gets here.'").

15

because the assessment resulted in recommended changes to her workstation, which were later implemented.  SMF ¶¶ 37-40.

As an initial matter, the Court notes that Defendant does not dispute that a request for an ergonomic workstation is a reasonable request.  See Reply at 4; see also Fol v. City of New York, No. 01 CIV. 1115, 2003 WL 21556938, at *8 (S.D.N.Y. July 9, 2003) (noting that "[t]here is no question that [p]laintiff's request for an ergonomic workstation" is a reasonable accommodation).  Moreover, although Defendant eventually provided Plaintiff with a new chair and workstation, a rational factfinder could conclude that the six-month delay establishes a failure to reasonably accommodate Plaintiff's disability.  See id. (finding that "a reasonable jury could conclude that Defendants failed to reasonably accommodate Plaintiff's disability by more promptly providing an ergonomic workstation").  Therefore, Defendant has failed to show a lack of material dispute as to whether the workstation assessment was reasonably accommodated.

### iii.  Touchscreen Monitor

In November 2010, Plaintiff submitted a request to Bartholomew for a touchscreen monitor.  Pl.'s Mem. at 12.  Plaintiff claims that Bartholomew promised to check into it, but never responded to Plaintiff.  Id.  Plaintiff was eventually provided with a touchscreen monitor, but only upon her return to work in October 2011.  Swartz Aff. ¶ 101; SMF ¶ 89.  Defendant does not dispute Plaintiff's claims.  See generally Reply.

### iv.  Filing Assistance and Job Restructuring

Plaintiff claims that she first submitted a request for assistance with filing to Brewer, who passed along the request to Brown.  Pl.'s Mem. at 8.  However, Brown rejected Plaintiff's request on the grounds that it would be unreasonable to hire additional staff to assist Plaintiff with filing.

16

See id. Plaintiff responds that Brown mischaracterized her request as asking for additional staff, as opposed to merely reallocating duties among existing staff; moreover, Plaintiff contends that her request was reasonable, as evident by the fact that assistance with pulling and refilling charts by existing staff was provided upon her return to work in October 2011. Swartz Aff. ¶ 101; SMF ¶ 89.

Additionally, after Plaintiff's treating physician recommended that she minimize repetitive motions and computer-related tasks, she requested from Barrack that Defendant "brainstorm" a "possible reallocation of duties." Pl.'s Mem. at 9. Plaintiff claims that Barrack promised to "pass along any response." Id. However, Plaintiff did not receive any reply. Id.

Furthermore, in December 2010, Plaintiff requested to swap job duties because the Dragon Program allowed her to handle a larger direct-care case load, but she still had difficulty with intakes and hospital discharges that required greater use of her hands. Pl.'s Mem. at 12-13. Plaintiff claims that Brown rejected her request to reallocate her job duties and threatened to terminate her employment if she did not fulfill her keyboarding responsibilities. Id. Defendant responds that it adjusted Plaintiff's schedule to allow her to start earlier in the day, when her ability to use her hands was best, but does not otherwise refute Plaintiff's claims. See Reply at 3. Defendant does not contest that a request to reallocate job duties is reasonable. See id.; see also 42 U.S.C. § 12111(9).

After carefully reviewing the parties arguments concerning the above-mentioned accommodations, the Court finds that there is a genuine dispute as to whether Defendant refused to reasonably accommodate Plaintiff's disability. Regarding the Dragon Program, viewing Plaintiff's account favorably, she was required to provide the program at her own expense, it was inoperable for nearly a year, and she received inadequate training even once it became operable. Moreover, Defendant does not actually contest that it failed to accommodate Plaintiff's requests for assistance

with filing and job restructuring, as well as a touchscreen monitor.  Finally, a rational factfinder could determine that the delay and inadequacy of Defendant's apparent compliance with Plaintiff's workstation request was not truly an "accommodation."  Therefore, Defendant is not entitled to summary judgment on Plaintiff's failure to accommodate claim.

## B. Retaliation

Plaintiff claims that Defendant retaliated against her through adverse employment action in response to her requests for reasonable accommodations.  Am. Compl. ¶¶ 104-07, 112-15.  "To establish a prima facie case of retaliation under the ADA, a plaintiff must establish that (1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action."  Rodriguez v. Atria Sr. Living Grp., Inc., 887 F. Supp. 2d 503, 512 (S.D.N.Y. 2012) (citing Weissman v. Dawn Joy Fashions, Inc., 214 F.3d 224, 234 (2d Cir. 2000)).  Retaliation claims under the ADA are analyzed under the same burden-shifting framework discussed *supra*.  See Valtchev v. City of New York, 400 F. App'x 586, 589-90 (2d Cir. 2010) (citing Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 223 (2d Cir. 2001)).  If the plaintiff meets the *de minimis* burden of establishing a *prima facie* case, then the defendant must proffer a "legitimate, nonretaliatory reason for the challenged employment decision."  Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001).  Once the employer has met its burden, then the plaintiff must provide evidence sufficient to enable a rational trier of fact to conclude that such reason is a mere pretext for retaliation.  Id.

Defendant challenges Plaintiff's retaliation claim by arguing that: (1) Plaintiff's requests for reasonable accommodations do not constitute protected activity; (2) Defendant did not take any

adverse action against Plaintiff; and (3) there is no causal connection between the protected activity and alleged adverse action. Def.'s Mem. at 10.

### 1. *Prima Facie Case*

#### a. Protected Activity

Defendant argues that Plaintiff has failed to specifically allege that she engaged in any protected activities; however, Defendant concedes that "the only protected activities [Plaintiff] engaged in were requesting reasonable accommodations and filing the EEOC complaint." Def.'s Mem. at 10. "Requesting a reasonable accommodation of a disability is an ADA-protected activity." Rodriguez, 887 F. Supp. 2d at 512 (citing Weixel v. Bd. of Educ. of City of New York, 287 F.3d 138, 149 (2d Cir. 2002)); see also Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir. 1999) ("[F]iling of a complaint with the EEOC is an activity protected by the ADA."). Therefore, Plaintiff has undeniably engaged in protected activity.

#### b. Adverse Action

A "materially adverse" activity is one that might "dissuade a reasonable worker from making or supporting a charge of discrimination." Lewis v. Erie Cnty. Med. Ctr. Corp., 907 F. Supp. 2d 336, 350 (W.D.N.Y. 2012) (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)).

Defendant argues that to the extent Plaintiff claims that her § 72 leave constitutes adverse action, her claim is meritless. Def.'s Mem. at 10. In support, Defendant relies on Brady v. Dammer, 573 F. Supp. 2d 712 (N.D.N.Y. 2008) (Kahn, J.). However, Defendant's reliance on Brady is entirely misplaced. In Brady, the Court held that "[r]equiring an employee to submit to a section 72 exam does not, without more, constitute a 'materially adverse change. . . .'" Brady, 573

F. Supp. 2d at 724 (citing <u>Baum v. Rockland Cnty.</u>, 161 Fed. App'x 62, 64 (2d Cir. 2005)).  The

Court reasoned that forcing an employee to undergo a § 72 examination alone is insufficient because

"to be materially adverse [,] a change in working conditions must be more disruptive than a mere

inconvenience. . . ." <u>Brady</u>, 573 F. Supp. 2d at 724 (citing <u>Williams v. R.H. Donnelley, Corp.</u>, 368

F.3d 123, 128 (2d Cir. 2004)).

 However, Plaintiff does not argue that the § 72 examination by itself constitutes materially

adverse action; rather, the § 72 examination, followed by involuntary, unpaid leave, establish

materially adverse action.  Pl.'s Mem. at 19.  Plaintiff's argument is consistent with <u>Brady</u>, which

states that an examination, "without more," does not constitute materially adverse action.  <u>Brady</u>,

573 F. Supp. 2d at 724.  Here, the combination of the § 72 exam *and* the involuntary, unpaid leave

constitute a "materially adverse change" to Plaintiff's terms and conditions of her employment.  <u>See</u>

<u>Richardson</u>, 180 F.3d at 446; <u>see also</u> <u>Burlington N. & Santa Fe Ry. Co.</u>, 548 U.S. at 72, 73 (2006)

(holding that thirty-seven day involuntary unpaid leave could constitute adverse employment

action).  Therefore, Defendant has failed to show that its forced involuntary, unpaid leave did not

constitute an adverse action.

### c.   Causal Connection

 Plaintiff argues that she was repeatedly threatened by Brown that she would be terminated if

any of her requests were found unreasonable, and she was ultimately suspended from employment

without pay only days after she renewed her request to Brown for a reallocation of job duties.  Pl.'s

Mem. at 20-21.  That she was showing progress in the special review process, and was improperly

removed before being permitted to complete the process, only days after her final request, support

an inference that her requests were indeed the cause of her forced leave.  <u>See</u> <u>Kaytor v. Elec. Boat</u>

Corp., 609 F.3d 537, 552 (2d Cir. 2010) ("Close temporal proximity between the plaintiff's protected action and the employer's adverse employment action may in itself be sufficient to establish the requisite causal connection between a protected activity and retaliatory action.") (citation omitted); see also Holava-Brown v. Gen. Elec. Co., No. 98-CIV-9661, 1999 WL 642966, at *3 (2d Cir. Aug. 20, 1999) (noting that "[i]f the time that elapses between the protected activity and the adverse action is short enough, nothing more is necessary to satisfy the causation prong" and citing cases of lapses of ten to twelve days between filing of complaint and termination as sufficient). Therefore, Plaintiff has met her initial burden of establishing a prima facie case of retaliation.

### 2. Legitimate Non-Retaliatory Reason

Defendant responds that Plaintiff was not placed on leave because of her accommodation requests, but because she was deemed unfit for duty in her IME and was unable to perform her job even with accommodations in place. Reply at 8-9. Specifically, Defendant placed Plaintiff in a special review process prior to placing her on leave to give her an opportunity to bring her performance to a satisfactory level; only after she failed to achieve satisfactory performance, even with the accommodations in place, was she placed on leave. Id.

### 3. Pretext

Plaintiff responds that the special review process was merely pretext, as she was suspended while only on step two out of five, and her supervisor indicated that she was making "significant improvement" and likely would have been compliant if not suspended. See Pl.'s Mem. at 21, 22-24. Plaintiff also claims that McCracken conceded that Plaintiff's imposed leave was done in violation of the special review procedure. Id. at 24.

Viewing the facts in the light most favorable to Plaintiff, a rational factfinder could conclude that Plaintiff was placed on involuntary, unpaid leave in retaliation for her accommodation requests. Plaintiff claims that Brown repeatedly threatened to suspend her if she continued making accommodation requests. Pl.'s Mem. at 12-13. Moreover, Plaintiff was making progress on her performance and was abruptly removed from the special review process, despite her marked improvement. Defendant has failed to show that there is no genuine issue of material fact as to Plaintiff's retaliation claim and is therefore not entitled to summary judgment.

## V.     CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion (Dkt. No. 40) for summary judgment is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**


DATED:       September  30, 2014
             Albany, NY


Lawrence E. Kahn
U.S. District Judge